UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLARENCE F. STEPHENSON,

Petitioner,

vs.                                    Case No. 2:11-cv-120-FtM-29DNF

SECRETARY, DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

Respondents.
_____

**OPINION AND ORDER**

Petitioner Clarence F. Stephenson, a prisoner in the custody of

the Secretary of the Florida Department of Corrections, initiated this

action pro se by filing a "Petition for Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254" (Doc. #1, Petition) on February 25, 2011, in the

United States District Court for the Middle District of Florida,

Jacksonville Division.[1]   See Docs. #1, #4.   Due to Petitioner's

incarceration at Charlotte Correctional Institution at the time he

initiated the action, the action was transferred to the Ft. Myers

Division pursuant to 28 U.S.C. § 2241(d) and Local Rule 1.02(b)(M.D.

Fla.).[2]   See Doc. #4.   The Petition challenges Petitioner's placement

_____

[1]The Petition is properly characterized as filed pursuant to
section 2241. Medberry v. Crosby, 351 F.3d 1049, 1053 (11th Cir.
2003). Because Petitioner is also in custody pursuant to an order
from the State court, he is subject to additional restrictions of
section 2254. Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x
843, n. 1 (11th Cir. 2011)(unpublished).

[2]Although Petitioner is no longer at Charlotte Correctional
(continued...)

on "CM-I status"[3] at Columbia Correctional on May 19, 2010 and later Charlotte Correctional, due to an alleged false disciplinary report (log # 1005-201-230) for attempting to incite a riot issued on April 29, 2010, after which Petitioner was found guilty by the disciplinary hearing team. Petition at 2-3, 16. As a result of the guilty finding by the disciplinary hearing team, Petitioner was sentenced to 60 days in disciplinary confinement and lost 30 days of gain time. Id. at 3. Petitioner challenges the disciplinary report and subsequent placement on CM-1, arguing that the report and hearing violated his Sixth and Fourteenth Amendment rights, because he did not have an opportunity to review the video tape evidence and the disciplinary investigation did not begin within 24 hours of issuance of the disciplinary report in violation of Florida Admin. Code r. 33-601.305. Id. at 5. As relief, Petitioner seeks removal from CM-I status and transfer to South Bay Correctional, which is closer to his family. Id. at 8.

---

[2](...continued)
Institution and is now confined at Florida State Prison, the Court retains jurisdiction over the instant Petition because jurisdiction attaches at the time the Petition is filed, and Petitioner's subsequent transfer does not destroy that jurisdiction. Jones v. Cunningham, 371 U.S. 236, 243-44 (1963).

[3]Close Management is defined as "the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800(1)(d)(2006). There are three levels to Close Management status, with CM-I being the most restrictive and CM-III being the least restrictive. Id., r. 33-601.101(1)(e).

Respondents, the Secretary of the Florida Department of Corrections and the Florida Attorney General, filed a Response (Doc. #10, Response) and contend that the Court must dismiss this Petition because Petitioner is procedurally barred from filing this action under § 2254(b)(1). Respondents assert that Petitioner has not exhausted his administrative remedies before the State courts. See generally Response at 8-14. In particular, Respondents submit that a search of the Florida court's filing systems reveal that Petitioner did not initiate any action challenging the April 24, 2010 disciplinary report by filing a petition for writ of mandamus, or the subsequent CM-1 determination by filing a petition for writ of habeas corpus. Id. at 9-10. As of the date on this Order, Petitioner has not filed a Reply. The Court granted Petitioner's motion for an enlargement of time to file a Reply, but Petitioner did not and his time to do so has expired. See generally docket. Thus, this matter is ripe for review without the benefit of a Reply from Petitioner.

## Factual History and Procedural Background

On April 29, 2010, Petitioner was issued a disciplinary report for inciting or attempting to incite a riot by Sergeant Drawdy. Drawdy stated:

At approximately 1355 hours on April 29, 2010, while assigned as Columbia C.I. Annex, inside grounds supervisor, I was assisting with the supervision of inmates returning to their dormitories following a use of force on S dormitory recreation yard. While on the staging area between T and U dormitories I observed and heard inmate Ste[ph]enson, Clarence DC# 185325 stand up and loudly state "Fuck this shit, I'm going off, ya'll are a bunch of cowards, they

-3-

can't do this shit to us, ya'll can't let them do this shit!" I immediately ordered inmate Stephenson to submit to handcuffing, to which he complied. Handcuffs were applied and double locked by myself. Inmate Stephenson is in violation of F.A.C. 33-601-314 (2-2) Inciting or attempting to incite riots, strikes, mutinous acts, or disturbances-conveying any inflammatory, riotous, or mutinous communication by word of mouth, in writing or by sign, symbol, or gesture. Inmate Stephenson who is housed in cell U3-103L was was [sic] escorted to medical for a pre-confinement physical and placed in administrative confinement pending disposition of this report. The shift OIC was notified and authorized this report.

Petition at 11. Petitioner received notification of the disciplinary report on May 3, 2010. Id. The disciplinary hearing was held on May 6, 2010. Id. at 13. Petitioner was present and plead not guilty. Id. The hearing team found Petitioner guilty and wrote as follows:

THE HEARING TEAM FINDS INMATE STEPHENSON GUILTY BASED ON ALL FACTS DERIVED FROM THE DISCIPLINARY INVESTIGATION REPORT, WITNESS STATEMENTS, AND SGT. DRAWDY'S STATEMENT IN SECTION ONE OF THE DISCIPLINARY REPORT IN WHICH HE STATES IN PART HE OBSERVED AND HEARD INMATE STEPHENSON, CLARENCE DC# 185325 STAND UP AND LOUDLY STATE "FUCK THIS SHIT, I'M GOING OFF, YA'LL ARE A BUNCH OF COWARDS, THEY CAN'T DO THIS SHIT TO US, YA'LL CAN'T LET THEM DO THIS SHIT!" BASED UPON REVIEW OF THE IDENTIFIED TAPE OR THE CAPABILITIES OF THE PARTICULAR TAPING EQUIPMENT, THE TAPE REQUESTED DOES NOT PROVIDE EVIDENCE TO SUPPORT THE INMATE'S STATEMENT. SUMMARY OF TAPE REVIEW: THERE IS NO AUDIO. ACTIVITY WAS OUT OF RANGE OF CAMERA. TYPOGRAPHICAL ERRORS ADDRESSED IN HEARING: LINE 4 FROM BOTTOM "WAS" WAS ENTERED TWICE IN ERROR.

Id. at 13. As a result of the guilty finding, Petitioner lost 30 days of gain time and was held in disciplinary confinement for 60 days. Id.

Petitioner subsequently filed inmate grievances concerning the issuance of the disciplinary report. Id. at 18-36. However, the

matters grieved in formal grievance number 1005-210-230 were not properly exhausted because Petitioner's appeal of that formal grievance was returned without action due to Petitioner's non-compliance with the inmate grievance procedure.  Id. at 28.

On May 5, 2010, Petitioner was referred to CM level I status. Id. at 15.  Petitioner was recommended for the highest level security confinement based on his instigation or incitement of a riot or disorder.  Id.   In recommending CM-I status, Petitioner's classification officer stated:

> INMATE STEPHENSON IS BEING RECOMMENDED FOR PLACEMENT IN CMI BASED ON HIS BEHAVIOR AND PARTICIPATION IN A DISTURBANCE THAT OCCURRED AT COLUMBIA C.I.- ANNEX ON 4/29/2010. SPECIFICALLY WHILE ANOTHER INMATE WAS INVOLVED IN A USE OF FORCE INCIDENT ON THE S-DORM RECREATION YARD, NUMEROUS INMATES RAN OVER TO THE T & U-DORM RECREATION YARD CROSS FENCE AND BEGAN SHOUTING OBSCENITIES TRYING OT INCITE OTHER INMATES.   IT SHOULD BE NOTED THAT THERE WERE OVER 200 INMATES PRESENT ON THE RECREATION YARD.   SEVENTEEN INMATES WERE INVOLVED IN THE DISTURBANCE AND INMATE STEPHENSON WAS IDENTIFIED AS ONE OF THE PARTICIPANTS.  WHILE OFFICERS WERE LINING UP INMATES TO RETURN TO THEIR ASSIGNED DORMITORY INMATE STEPHENSON BECAME LOUD AND DISRUPTIVE, ATTEMPTING TO GAIN THE ATTENTION OF OTHER INMATES.   IT IS NOTED THAT INMATE STEPHENSON HAS PRIOR PLACEMENT IN CMI THIS COMMITMENT AND HAS 1 PRIOR DISCIPLINARY INFRACTION IN THE PREVIOUS 12 MONTHS FOR POSSESSION OF A CELL PHONE.  INMATE STEPHENSON IS CURRENTLY PENDING A DISCIPLINARY REPORT FOR HIS INVOLVEMENT IN THE ABOVE NOTED DISTURBANCE.  INMATE HAS SHOWN THAT HE IS A THREAT TO STAFF AND THE SECURITY OF THE INSTITUTION BY HIS ACTIONS.

Id. at 15.   The classification hearing team met and Petitioner was present on May 14, 2010.   Id. at 16.   The classification team recommended Petitioner's placement on CM-I and found as follows:

> INMATE STEPHENSON WAS INTERVIEWED THIS DATE.   INMATE
> STEPHENSON STATED THAT HE WAS ON THE BASKETBALL COURT AND
> DID NOT PARTICIPATE.   HIS PARTICIPATION AND BEHAVIOR IN A
> DISTURBANCE INVOLVING APPROXIMATELY 17 OTHER INMATES COULD
> HAVE CAUSED THE SITUATION TO ESCALATE INTO MORE SERIOUS
> PROPORTIONS CAUSING HARM TO STAFF AND INMATES ALIKE.   INMATE
> STEPHENSON HAS SHOWN THAT HE IS A THREAT TO STAFF AND THE
> SAFE OPERATION OF THE INSTITUTION.   RECOMMENDED CM1-
> 510/119.

Id. at 16.  On May 19, 2010, the State Classification Office approved

Petitioner for CM-I.   Id.  Petitioner pursued his administrative

remedies in jail regarding his CM-I placement on July 13, 2010, when

his response to the grievance appeal was filed with the agency clerk

and mailed.   Id. at 60.

Respondents assert that Petitioner did not pursue any claims

before the State court concerning the disciplinary report or his CM-I

status.   Petitioner did not file a Reply to rebut Respondents'

assertion, or otherwise provide proof that he did pursue his claims

before the Florida courts, or explain why he did not.   Petitioner

initiated this action on February 23, 2011.   See docket.

Standard of Review

A.   28 U.S.C. § 2254 and Disciplinary Proceedings

A state prisoner who is deprived of gain time as a result of a

prison disciplinary proceeding that allegedly violated due process may

seek  federal  habeas  review,  but  such  review  is  governed  by

restrictions set forth under 28 U.S.C. § 2254.   Medberry, 351 F.3d at

1054.  Under the deferential review standard, habeas relief may not be

granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the

-7-

court." <u>Childers v. Floyd</u>, 642 F.3d at 969 (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." <u>Thaler v. Haynes</u>, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Ponticelli v. Sec'y, Fla. Dep't of Corr.</u>, 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in <u>Harrington v. Richter</u>, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. <u>Id.</u> (citations omitted). Whether a court errs in determining facts "is even more deferential

-8-

than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

The Court recognizes that prison disciplinary proceedings are not part of a criminal prosecution, and therefore the full panoply of rights that are due a defendant in a criminal proceeding does not apply. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id.

In Wolff, the United States Supreme Court held "that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Further, the Court held that "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. The Court further explained "there must be a 'written statement by the fact

finders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

The Court also noted "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. The Court explained its concern for institutional safety:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinary difficult undertaking. Many prison officials, on the spot and with the

> responsibility for the safety of inmates and
> staff, are reluctant to extend the unqualified
> right to call witnesses; and in our view, they
> must have the necessary discretion without being
> subject to unduly crippling constitutional
> impediments.   There is this much play in the
> joints of the Due Process Clause, and we stop
> short of imposing a more demanding rule with
> respect to witnesses and documents.

Id. at 566-567.

An inmate facing a disciplinary charge, however, has no constitutional right to confrontation and cross-examination of witnesses furnishing evidence against him at the disciplinary hearing. Id. at 567.  The Court left this matter to the sound discretion of the officials of the state prisons.   Id. at 569.   Finally, the disciplinary hearing committee must be sufficiently impartial in that it must not present "a hazard of arbitrary decision making."   Id. at 571.

### B.   Section 2254's Exhaustion Requirement

A petitioner, when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues.   A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."   28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also Duncan v. Henry, 513 U.S. 364, 365-66 (1995). "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). See also Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003), cert. denied, sub nom. Pruitt v. Hooks, 543 U.S. 838 (2004). To properly exhaust a claim, a petitioner must present the *same* claim to the state court that he urges the federal court to consider. A mere citation to the federal constitution is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983). "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

Pursuant to Florida law, any claims Petitioner wished to pursue pertaining to the alleged false disciplinary report should have been filed by a petition for writ of mandamus in the Florida courts. Bush v. State, 945 So. 2d 1207, 1210 (Fla. 2006). And, Petitioner should have filed a petition for writ of habeas corpus before the Florida courts concerning any claims concerning his placement on CM-I status.

See Kendrick v. McNeil, 6 So. 2d 657 (Fla. 1st DCA March 5, 2009)(finding Florida courts consistently ruled that an inmate seeking release from close management is entitled to proceed through a petition for writ of habeas corpus)(citations omitted).

### Analysis

In the Petition, Petitioner challenges his unlawful placement on CM-I and requests *inter alia* that the Court remove him from CM-I status. Petition at 8. The basis for Petitioner's CM-I classification status stems from an April 29, 2010 disciplinary report for inciting or attempting to incite a riot, which Petitioner asserts is false and further contends that the disciplinary hearing related to this report violated his right to Due Process, because he was not allowed to review the video tape evidence and the investigation of the infraction did not commence within twenty-four hours of writing the report pursuant to Rule 33-601.305. Id. at 3-6.

For the reasons that follow, the Court finds Petitioner did not fully and completely exhaust his administrative and/or State remedies. Consequently, the Petition is unexhausted and due to be dismissed because the claims are now procedurally defaulted. Alternatively, the Court denies the Petition on the merits because Petitioner was afforded all the Due Process that is required.

### Claims Regarding Issuance of Disciplinary Report and Hearing

Petitioner essentially challenges the disciplinary report and subsequent disciplinary hearing. Notably, the relief he seeks is not

directly related to either the disciplinary report or the hearing. Instead, Petitioner requests removal from CM-I status and transfer to a different correctional facility. Petitioner, however, indirectly challenges the disciplinary report and hearing to the extent that his placement on CM-I stemmed from this disciplinary infraction. Nevertheless, the Court finds Petitioner did not properly exhaust his claims regarding the issuance of the disciplinary report and subsequent hearing. An inmate seeking relief from an alleged error committed by the Department of Corrections ("Department") must first exhaust all available administrative remedies before receiving consideration from the court. See e.g. Reed v. Moore, 768 So. 2d 479 (Fla. 2nd DCA 2000). The administrative remedy available to all inmates is the Department's three step internal dispute resolution procedure set forth in Florida Admin. Code Rule 33-103. The first step is an informal grievance raised within the institution where the inmate is housed. Fla. Admin. Code. r. 33-103.005. The second set is a formal grievance directed to the warden or assistant warden of the institution. Fla. Admin. Code. r. 33-103.006. The final step is an appeal to the Office of the Secretary of the Department. Fla. Admin. Code. r. 33-103.007.

Although Petitioner filed many inmate grievances concerning the disciplinary action for inciting or attempting to incite a riot, he failed to properly exhaust any of the grievances by perfecting a timely appeal to the Office of the Secretary. See Petition at 28

-14-

(dismissing formal grievance concerning issuance of disciplinary report and subsequent hearing at institutional level as untimely). Consequently, Petitioner's due process challenge to his disciplinary report is not exhausted and would now be procedurally defaulted under the Department's Rules.   Petitioner's recourse to challenge the disciplinary report was to properly exhaust his administrative grievances before presenting the fully exhausted claim to the state court for its review.  Petitioner did not do so, and thus this Court is unable to review the merits of the claim.  Petitioner has failed to demonstrate either cause for the failure to properly present the claim and actual prejudice from the default, or that a fundamental miscarriage of justice would result if the Court did not consider the claim.  Thus, the claim is dismissed as procedurally defaulted.

Even if Petitioner had perfected the administrative review of his claim by properly filing the grievances according to the Department's three-step process, Petitioner did not raise any claim concerning the disciplinary report and hearing in the State court by filing a petition for writ of mandamus.  As discussed supra, pursuant to Florida law, any claims Petitioner wished to pursue pertaining the alleged false disciplinary report should have been filed by a petition for writ of mandamus.  Bush, 945 So. 2d at 1210.  Florida law requires that the petition for writ of mandamus be filed in the Second Judicial Circuit Court in and for Leon County, Florida, where the Department of Corrections is located.  Id. at 1215.  Petitioner apparently failed to

file a petition for writ of mandamus and does not explain otherwise. Respondents point out that the Second Judicial Circuit in Leon County enjoined Petitioner from filing *pro se* complaints, petitions, and other initial pleadings due to his prolific filing. See Doc. #10-1 (state court order). Petitioner was not enjoined from filing any habeas corpus cases. Id. Rather than address whether the State court's injunction preventing Petitioner from filing *pro se* complaints or other initial pleadings resulted in the absence of available State corrective process, or whether those circumstances rendered the process ineffective to protect Petitioner to excuse the exhaustion requirement, 28 U.S.C. § 2254(b)(1)(A), the Court will deny these claims on the merits.

To address the merits, Petitioner's alleged due process claims must be measured according to the test established by the United States Supreme Court in Wolff v. McDonnell. It is not a question of whether state law or an administrative departmental policy was violated,[4] but rather the inquiry concerns whether Petitioner's

_____

[4]It is important to note that liberty interests protected by the Fourteenth Amendment may arise either from the Constitution itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). To assert a state-created entitlement to a liberty interest, a party must show the state placed substantive limitations on official discretion. Barfield v. Brierton, 883 F.2d 923, 935 (11th Cir. 1989). Thus, a claim that a Department of Corrections rule or regulation contains mandatory language that substantially limits prison officials' discretion, thereby creating a liberty interest, has merit. See Caraballo-Sandoval v. Honsted,35 F.3d 521, 525 (11th Cir. 1994). However, the United (continued...)

allegations rise to the level of a federal constitutional violation, and whether the procedural deficiencies are ones that violate Petitioner's due process rights guaranteed to him pursuant to the Fourteenth Amendment of the United States Constitution.

> Although the courts are required to recognize a constitutional duty to protect prisoners' rights, nevertheless "[t]he Supreme Court has articulated for the federal courts a policy of minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions." Williams v. Edwards, 547 F.2d 1206, 1212 (5th Cir. 1977); Campbell v. Beto, 460 F.2d 765, 767 (5th Cir. 1972); Breeden v. Jackson, 457 F.2d 578, 580 (4th Cir. 1972). In reviewing administrative findings under a federal habeas corpus or a section 1983 complaint, the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion. Thomas v. Estelle, 603 F.2d 488, 490 (5th Cir. 1979), reh. denied, 606 F.2d 321 (5th Cir. 1979); Wilwording v. Swenson, 502 F.2d 844, 851 (8th Cir. 1974), cert. denied, 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); U.S. v. Smith, 464 F.2d 194, 196 (10th Cir.), cert. denied, 409 U.S. 1066, 93 S.Ct. 566, 34 L.Ed. 2d 519 (1972). The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is

---

⁴(...continued)
States Supreme Court, in Sandin v. Conner, 515 U.S. 472, 484, stated that while States may under certain circumstances create liberty interests which are protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

required, but the courts must consider whether at least the decision is supported by "some facts" -- "whether any evidence at all" supports the action taken by the prison officials. <u>Willis v. Ciccone</u>, 506 F.2d 1011, 1018, 1019 n. 11 (8th Cir. 1974).

Here, Petitioner does not contend that he was denied any of the procedural safeguards set forth in <u>Wolff v. McDonnell</u>. Petitioner claims the Department violated his rights by failing to commence their investigation within a certain amount of time pursuant to the Department's rules and by not allowing Petitioner to view the video tape evidence. As set forth above, a claim that the Department violated its own rules regarding time allowed to commence the investigation of the disciplinary report, does not raise to the level of a constitutional claim. Even if it did, the reocrd refutes Petitioner's claim. <u>See</u> Petition at 22 (Department response noting that the disciplinary report was written on April 29, 2010 at 2030 hours and the investigation began at 2103 hours in compliance with the Department's rules). Further, the video tape evidence that Petitioner requested to see to no avail, was irrelevant to Petitioner's finding of guilt. The attachments to the Petition show that the video tape neither proved Petitioner's guilt, nor innocence, because the camera was out of range and had no audio. <u>See Id.</u> at 13, 22.

The facts as set forth in the Petition and attachments show that Petitioner received written notice specifically including the charges against him and was informed that the hearing would not take place prior to 24 hours of the delivery of the charges. <u>See</u> Petition at 11,

"Charging Disciplinary Report" (hereinafter "DR") dated April 10, 2010.  Further, the DR referred Petitioner to the operative Florida Administrative Code provisions and informed Petitioner that any witness testimony would be presented to the committee by written statements.  Id.  Petitioner had a disciplinary hearing, at which Petitioner was present, and the committee found Petitioner guilty. The committee found Petitioner guilty upon review of "the disciplinary investigation report, witness statements, and Sergeant Drawdy's statement."  Id. at 13.  Based on a review of the Petition and attachments, it is apparent that the committee relied upon facts in supporting their initial finding of guilt and did not reach an arbitrary and capricious decision.  Thus, the Court finds the Petition fails to state a constitutional claim arising out of the initial failure to include a witness statement.

### Claims Regarding CM-I Classification

Petitioner claims he was erroneously classified on CM-I. Respondents concede that Petitioner exhausted his CM-I claims before the Department.  Response at 6.  Respondents nevertheless argue that these claims are procedurally defaulted because Petitioner failed to raise these claims before the Florida courts.  Id. at 8-12. Petitioner did not file a Reply.

The Court agrees that Petitioner's claims regarding his placement on CM-I status are not exhausted and would now be procedurally defaulted under Florida law.  Petitioner should have filed a petition

for writ of habeas corpus before the Florida courts concerning any claims concerning his placement on CM-I status. <u>See</u> <u>Kendrick v. McNeil</u>, 6 So. 2d 657 (Fla. 1st DCA March 5, 2009)(finding Florida courts consistently ruled that inmate seeking release from close management is entitled to proceed through a petition for writ of habeas corpus)(citations omitted). Petitioner did not file petition for writ of habeas corpus before the Florida courts concerning his placement on CM-I status before filing this action. Consequently, these claims are due to be dismissed as unexhausted and procedurally defaulted.

Nevertheless, the Courts have consistently held that a prisoner's initial classification level based on the institution's custodian classification system does not create a liberty interest. In <u>Moody</u>, a prisoner complained that an outstanding warrant adversely affected his classification once confined. <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 8 (1976). The Supreme Court "rejected the notion that every state action carrying adverse consequences for the prison inmates automatically activates a due process right." Similarly, the Fifth Circuit, citing a litany of cases, noted that "an inmate has no protectable liberty interest in his classification." <u>Wilkerson v. Stalder</u>, 329 F.3d 431, 436 (5th Cir. 2003), <u>cert. denied</u> <u>Cain v. Wilkerson</u>, 540 U.S. 966 (2003). In <u>Brooks v. Wainwright</u>, 439 F.Supp. 1335, 1339 (M.D. Fla. 1977), the Court found that the Due Process Clause is not implicated "when the location or kind of an inmate's

confinement is changed by transfer or classification." (citations omitted).

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Petition for Writ of Habeas Corpus is **DISMISSED** as procedurally defaulted, or in the alternative **DENIED**.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

-21-

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this <u>16th</u> day of December, 2013.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: ALJ
Copies: All Parties of Record